**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

TREVON CHAVOUS and PRISCILLA
CHAVOUS,

                    Plaintiffs,

      v.

M&T BANK, KATHERINE ZHENG, SUPREME
ASSOCIATES,

                    Defendants.

5:25-cv-01247 (AMN/MJK)

---

**APPEARANCES:**

**TREVON CHAVOUS**
**PRISCILLA CHAVOUS**
139 Maple Ter.
Syracuse, New York 13210
Plaintiffs *pro se*

**HODGSON RUSS LLP**
605 Third Avenue – Suite 2300
New York, New York 10158
*Attorneys for Defendants M&T Bank*
*and Katherine Zheng*

**OF COUNSEL:**

**CARMINE CASTELLANO,**
**ESQ.**

**Hon. Anne M. Nardacci, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

On August 1, 2025, plaintiffs Trevon Chavous and Priscilla Chavous ("Plaintiffs") commenced this action in the Supreme Court of the State of New York, County of Onondaga, bringing various claims against defendants M&T Bank ("M&T"), Katherine Zheng ("Zheng") (together, "Defendants"), Supreme Associates International ("Supreme Associates"),[1] and White

---

[1] Service upon Supreme Associates has failed twice. Dkt. Nos. 46, 57.

1

Harbor Group. *See* Dkt. No. 1 at ¶ 1. On September 9, 2025, Defendant M&T, with Defendant Zheng's consent, timely removed the action to this Court pursuant to 28 U.S.C. § 1446(b). *Id.* at ¶¶ 3, 6. After Plaintiffs were served with the Notice of Removal, Dkt. No. 13, Plaintiffs filed motions for leave to proceed *in forma pauperis*, Dkt. Nos. 16-17, which United States Magistrate Judge Mitchell J. Katz granted on September 18, 2025, Dkt. No. 20. On September 22, 2025 Plaintiffs filed an amended complaint as of right. Dkt. No. 23 ("Amended Complaint").

Presently before the Court is Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. No. 35 (the "Motion"). Plaintiffs responded, Dkt. No. 36, and Defendants replied, Dkt. No. 39. For the reasons that follow, the Court grants the Motion.

## II.   BACKGROUND

### A. The Parties

Plaintiffs are individuals residing in the State of New York. Dkt. No. 23 at ¶ 1. Defendant M&T Bank is a banking corporation doing business in New York. *Id.* at ¶ 2. Defendant Katherine Zheng is alleged to be an employee of Defendant M&T Bank. *Id.* at ¶ 3. Plaintiffs allege that Supreme Associates is the entity that sold them the property at issue in this suit. *Id.* at ¶ 4. Plaintiffs allege that White Harbor Group is the insurance company "that issued and later canceled an insurance policy on the subject property." *Id.* at ¶ 5.

### B. Plaintiff's Factual Allegations

Plaintiffs' allegations arise out of a mortgage they received through Defendant M&T Bank, represented by its employee Defendant Zheng. Dkt. No. 23 at ¶¶ 10-26. On or about April 25, 2025, Plaintiffs closed on said mortgage for the purchase of real property located at 215 W. Beard Street, Syracuse, NY 13205 (the "Property"). *Id.* at ¶ 10. Plaintiffs allege that throughout the

transaction they "relied heavily on the representations of Defendants." *Id.* at ¶ 11. Plaintiffs specifically allege that Defendant Zheng told Plaintiffs that they had to purchase a one-unit property despite being "originally approved for a $140,000 mortgage loan for a two-unit property." *Id.* at ¶ 12. Plaintiffs further allege that Defendant Zheng knew that the Property was unsafe, "yet pushed Plaintiffs to close by stating they could lose both the house and the loan." *Id.* at ¶ 15.

After closing, Plaintiff allege that they "never received required [Truth in Lending Act] disclosures, including notice of rescission rights, accurate APR, or itemized closing costs." *Id.* at ¶ 18. Plaintiffs also allege that the Property was staged to appear habitable, but they later discovered that it contained "severe hazards, including a damaged roof, asbestos, structural instability, concealed water damage, mold, rodent infestations, defective mechanicals, and overall uninhabitable conditions." *Id.* at ¶ 16. Additionally, Plaintiffs allege that Supreme Associates had previously entered into an encroachment agreement with non-party Dream Realty regarding the Property, which was not identified in the Property's appraisal. *Id.* at ¶ 17.

Plaintiffs further allege that because of the unsafe conditions, "White Harbor Group canceled insurance coverage" and the New York State Energy Research and Development Authority ("NYSERDA") "closed out Plaintiffs' insulation and energy upgrade application." *Id.* at ¶¶ 21-22. Plaintiffs allege that they "sent a [qualified written request ("QWR")]" and Debt Validation Request to Defendants on July 11, 2025, as well as a Notice of Rescission on July 29, 2025. *Id.* at ¶ 24.

**Plaintiff's Legal Claims**

The Amended Complaint lists fourteen causes of action: (i) fraudulent misrepresentation against all defendants as to "the condition of the Property, bedroom count, mortgage eligibility, insurance availability, and [Truth in Lending Act] disclosures"; (ii) violations of the Truth in

3

Lending Act ("TILA") against Defendants for failure to provide required disclosures; (iii) predatory lending by Defendants in violation of Home Ownership and Equity Protection Act ("HOEPA"); (iv) lack of standing against Defendant M&T; (v) "Quiet Title" pursuant to New York Real Property Actions and Proceedings Law ("RPAPL") against Defendant M&T Bank and Supreme Associates; (vi) injunctive relief against all four defendants; (vii) unjust enrichment against Defendant M&T Bank and Supreme Associates; (viii) failure to provide closing documents under the TILA, HOEPA, and Real Estate Settlement Procedures Act ("RESPA"); (ix) misrepresentation of property value against all four defendants; (x) "insurance cancellation damages" against White Harbor Group; (xi) loss of New York State Energy Research and Development Authority program funding against M&T Bank and Supreme Associates; (xii) failure to report negative impacts on credit against all defendants; (xiii)  predatory lending against Defendants under the Dodd-Frank Act; and (xiv) "Predatory Lending – Explicit High-Cost/Unsafe Loan Practices" against Defendants.  *Id.* at 3-5.

### C. Procedural History

Prior to commencing this action ("*Chavous II*") in state court, Plaintiffs filed a separate action in this Court alleging claims largely based on the same set of events.  *See* Case No. 5:25-cv-00562-AMN-MJK ("*Chavous I*"), Dkt. Nos. 1, 8.  After this Court dismissed both the complaint and amended complaint in that action with leave to amend, *Chavous I*, Dkt. No. 10, Plaintiffs submitted a notice of voluntary dismissal on August 7, 2025, *Chavous I*, Dkt. No. 19, which the Court approved, *Chavous I*, Dkt. No. 20.

### III.    STANDARD OF REVIEW

#### A.  Motion to Dismiss pursuant to Rule 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) is properly granted "when the court lacks statutory or constitutional authority to adjudicate it." *Cayuga Indian Nation of New York v. Vill. of Union Springs*, 293 F. Supp. 2d 183, 187 (N.D.N.Y. 2003) (citing *Luckett v. Bure*, 290 F.3d 493, 496 (2d Cir. 2002)).  To resolve such a motion, the court "accepts as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff."  *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003) (citing *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll.*, 128 F.3d 59, 63 (2d Cir. 1997)).

#### B.  Motion to Dismiss Pursuant to Rule 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)") tests the legal sufficiency of a party's claim for relief. *Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007).  In considering legal sufficiency, a court must accept as true all well-pled facts in the complaint and draw all reasonable inferences in the pleader's favor.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  This presumption, however, does not extend to legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to sho[w] that the pleader is entitled to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (alteration in original) (quotation omitted).  Under this standard, a pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 555 (citation omitted), and present claims that are

"plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed," *id.* at 570.

### C. Leave to Amend

Rule 15(a) of the Federal Rules of Civil Procedure permits a party to amend its pleading once as a matter of course "no later than: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(A)-(B). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). When a cross-motion for leave to file an amended complaint is made in response to a motion to dismiss under Rule 12(b)(6), leave to amend will be denied as futile only if the proposed new claim cannot withstand a motion to dismiss for failure to state a claim, *i.e.*, if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief. *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991). When assessing futility, the court employs a standard comparable to that utilized in assessing a motion to dismiss under Rule 12(b)(6). *See Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (observing that "leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss").

6

## IV.    DISCUSSION

### A.  Voluntary Dismissal of White Harbor Group

On November 7, 2025, Plaintiffs responded to Magistrate Judge Katz's order directing them to clarify whether they wished to proceed with litigation against defendants Supreme Associates and White Harbor Group.  *See* Dkt. No. 49.  In their response, Plaintiffs sought to voluntarily dismiss White Harbor Group pursuant to Federal Rule of Civil Procedure 41(a)(1)(A) because "this party's involvement was limited to a single, now resolved insurance matter."  Dkt. No. 50 at 1.[2]  The Court acknowledges Plaintiff's request and accordingly dismisses White Harbor Group from this action.  The Court also dismisses Plaintiff's tenth cause of action for "insurance cancellation damages" against White Harbor Group.

### B.  12(b)(1)

Turning to Defendants' Motion, Defendants first argue that the Court lacks subject matter jurisdiction over this matter because Plaintiffs voluntarily dismissed as moot their previous action predicated on the same events.  Dkt. No. 35 at 4-5.  The Court disagrees.

"A case is moot, and accordingly federal courts have no jurisdiction over the litigation, when 'the parties lack a legally cognizable interest in the outcome.'" *Fox v. Bd. of Trustees of State Univ. of N.Y.*, 42 F. 3d 135, 140 (2d Cir. 1994).  But when a plaintiff dismisses an action by filing a notice of dismissal before the opposing party serves an answer, "the dismissal is without prejudice."  Fed. R. Civ. P. 41(a)(1)(B); *cf. Horton v. Trans World Airlines Corp.*, 169 F.R.D. 11 (E.D.N.Y. 1996) ("Because a dismissal with prejudice operates as an adjudication on the merits for purposes of res judicata, it would be highly anomalous for a court to enter a dismissal with

---

[2] Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system

prejudice where . . . it is apparent that it lacks subject matter jurisdiction to adjudicate the claims asserted against the adverse parties in question.").

In *Chavous I*, Plaintiffs stated that "circumstances have changed such that there is no longer a live controversy requiring judicial resolution," *Chavous I*, Dkt. No. 19 at ¶ 2. Plaintiffs also asserted that "the Court no longer has subject matter jurisdiction under Article III." *Id.* at ¶ 4. Plaintiff's notice of dismissal, however, did not request dismissal with prejudice, *see id.*, and the Court gave no indication that leave to amend would be futile, *see generally Chavous I*, Docket Sheet. Thus, the Court entered Plaintiff's voluntary dismissal in the previous case pursuant to Rule 41(a)(1)(A) without prejudice. *See Chavous I*, Dkt. No. 20. The Court also finds that while Plaintiffs have sued some of the same Defendants here as in the previous case, Plaintiffs have also raised various new claims against them. *Compare Chavous I*, Dkt. No. 1 at 7-9 *with Chavous II*, Dkt. No. 23. Therefore, and considering also Plaintiffs' *pro se* status, the Court denies Defendants' Motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).

### C.  12(b)(6)

The Court agrees with Defendants, however, that Plaintiffs fail to state a claim as to each of their causes of action. The Court considers each of Plaintiffs' claims in turn.

#### 1.  Statutory Claims

##### a.   TILA Violation

Pursuant to the Truth in Lending Act, Plaintiffs' second cause of action alleges that Defendants "failed to provide required disclosures, including notice of rescission rights, accurate APR, and itemized closing costs." *Id.* at 3. Plaintiffs, however, do not invoke any specific TILA provision nor do they provide further factual allegations explaining how Defendants violated

TILA.  *See generally id.*  Plaintiffs also fail to allege any harm resulting from Defendants' alleged violation.

For their part, Defendants assert that Plaintiff's allegations are false and submit a closing disclosure ("Closing Disclosure"), signed by Plaintiffs, demonstrating as much.  Dkt. No. 35-1 at 12-13; Dkt. No. 35-3 at 1-5.  Because the Amended Complaint alleges a lack of closing documents, the Court finds that the Closing Disclosure is integral to the Amended Complaint and considers the Closing Disclosure for purposes of the Motion.  *See Glob. Network Commc'ns v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006).  Furthermore, the Court finds that the Closing Disclosure demonstrates that Plaintiffs did in fact receive the required disclosures in contravention of their claim under the TILA.  Therefore, the Court dismisses Plaintiff's second cause of action.

### b.  HOEPA Violation

In their third cause of action, Plaintiffs allege that Defendants violated the Home Ownership and Equity Protection Act ("HOEPA") and "related Dodd-Frank provisions", alleging that "Defendants engaged in high-cost loan practices, predatory lending, and deceptive loan structuring."  Dkt. No. 23 at 3.  But Plaintiffs fail to provide further details alleging whether or how the loan at issue is a high-cost loan or how it is otherwise covered by HOEPA.  *See* 15 U.S.C. §§ 1602(bb), 1639c (defining "high-cost mortgage" and setting minimum standards for residential mortgage loans, respectively).  Plaintiffs also do not specifically allege how Defendants acted or failed to act in violation of HOEPA.  *See generally* Dkt. No. 23.  For these reasons, the Court finds that Plaintiffs have failed to state a claim under HOEPA and dismisses their third cause of action.

### c.  Failure to Provide Closing Documents

Plaintiffs' eighth cause of action alleges that Defendant M&T "failed to provide the promissory note [ ] and other critical closing documents [ ], in violation of TILA, [Real Estate

Settlement Procedures Act ("RESPA")], and HOEPA.  Dkt. No. 23 at 4.  Plaintiffs specifically cite to TILA, "15 U.S.C. § 1635" and RESPA, "12 U.S.C. § 2601 et seq.", and contend that the omission of a promissory note "calls into question the enforceability of the mortgage and preserves Plaintiffs' rights to rescind or challenge the loan."  Dkt. No. 23-1 at 16.  As in their second and third causes of action, Plaintiffs fail to make factual allegations sufficient to state a claim under the cited statutes.  Additionally, the TILA provision to which Plaintiffs cite does not refer to promissory notes, closing documents, or any rights specifically associated therewith.  *See* 15 U.S.C. § 1635.  To the extent that Plaintiffs are alleging that Defendants failed to disclose certain rights because they did not provide certain closing documents, the Court finds that Plaintiffs did in fact receive, and sign, the relevant closing documents.  Dkt. No. 35-3 at 1-5; *see supra* Section IV.C.1.A.

As to RESPA, the Court interprets Plaintiffs' claim to allege that Defendant M&T failed to respond to Plaintiffs' purported Qualified Written Request ("QWR").  *See* Dkt. No. 23 at ¶ 24; Dkt. No. 23-1 at 39-44.  Under RESPA, a QWR is written correspondence that identifies a borrower's account and "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."  12 U.S.C. § 2605(e)(1)(B).  After reviewing Plaintiffs' submission, however, the Court finds that the letter that Plaintiffs allege that they sent to Defendant M&T fails to qualify as a QWR under the terms of the statute.  *See* Dkt. No. 23-1 at 39-44.  Furthermore, Plaintiffs do not explain whether Defendant M&T had a designated QWR address and whether they sent their letter to that address.  *See Mack v. ResCorp. Borrower Claims Trust*, 678 Fed. App'x 10, 14-15 (2d Cir. 2017) (finding that because plaintiff sent letter to "General Inquiries" address instead of designated address for QWRs, loan servicer's RESPA duties were

never triggered); *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 181 ("[F]ailure to send [request] to the designated address, does not trigger the servicer's duties under RESPA.") (citation and internal quotation marks omitted).  Accordingly, the Court dismisses Plaintiffs' claim for failure to provide closing documents.[3]

### d.  Fair Credit Reporting Act

Plaintiffs' twelfth cause of action, brought against all defendants, states that "[d]efendants' failure to properly report or respond caused negative credit impacts."  *Id.* at 4.  To the extent that Plaintiff is alleging a claim pursuant to the Fair Credit Reporting Act ("FCRA"), the Court finds that Plaintiffs fail to adequately allege such a claim.  To state a claim under FCRA, a plaintiff must show that "(1) the [credit information] furnisher received notice of a credit dispute from a credit reporting agency, and (2) the furnisher thereafter acted in willful or negligent noncompliance with the statute."  *Markovskaya v. Am. Home Mortg. Servicing, Inc.*, 867 F. Supp. 2d 340, 343 (E.D.N.Y. 2012) (citation and internal quotation marks omitted).

Here, Plaintiffs do not allege that any defendant received notice of a credit dispute from a credit reporting agency but instead merely allege that one of their credit scores was negatively impacted.  *See* Dkt. No. 23-1 at 114-17 (printouts of credit reports).  Accordingly, Plaintiffs fail to allege a claim under FCRA and the Court dismisses their twelfth cause of action against Defendants.

---

[3] Even if Plaintiffs' letter is a proper QWR, Plaintiffs' allegation that Defendants failed to respond runs counter to Defendants' submission.  Defendants submit documents that appear to be responses to Plaintiffs' letter dated July 7, 2025, with supporting enclosures.  Dkt. No. 39-2 at 1-59.  Given that Plaintiffs allege that Defendant did not respond to their QWR and that Plaintiffs' claim is predicated on a lack of closing documents, the Court finds that Defendants' submissions are integral to the Amended Complaint and considers them.

### e.  RPAPL Quiet Title

Pursuant to the RPAPL, Plaintiffs' fifth cause of action seeks "a declaration voiding the mortgage lien due to fraud, statutory violations, misrepresentation, and request to quiet title." *Id.* at 3.  A plaintiff bringing a quiet title claim under RPAPL Article 15 must allege: "(i) the nature of the plaintiff's interest in the real property and the source of this interest; (ii) that the defendant claims or appears to claim an interest in the property adverse to the plaintiff's interest, and the nature of the defendant's interest; (iii) whether any defendant is known or unknown and whether any defendant is incompetent; and (iv) whether all interested parties are named and whether the judgment will or might affect other persons not ascertained at the commencement of the action." *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 419 (S.D.N.Y. 2010) (citing N.Y. Real Prop. Acts. Law § 1515(1) (McKinney 2022)).  Because a quiet title action concerns competing claims to real property, it is essential that the plaintiff states that a defendant has an adverse interest in the real property at issue.  *Id.* (*see* N.Y. Real Prop. Acts. Law § 1515(1)(b) (McKinney 2022)).

Here, Plaintiffs' allegations fail to meet any of these elements.  Plaintiffs allege "fraud, statutory violations, misrepresentations," but without factual allegations detailing any defendant's actions, these are bald conclusions.  *See* Dkt. No. 23 at 3.  And even if they were not conclusory, such allegations do not constitute the elements of a claim to quiet title.  As such, the Court accordingly dismisses Plaintiff's fifth cause of action as to Defendants.

### f.  Predatory Lending

Plaintiffs' thirteenth and fourteenth causes of action allege that Defendants engaged in further forms of predatory lending in violation of "Dodd-Frank and federal consumer protection statutes".  *Id.* at 4. Specifically, Plaintiffs allege that "Defendants knowingly engaged in abusive, unfair, and deceptive acts" and "knowingly issued an unsafe, unaffordable loan, misrepresented

terms, and failed to provide disclosures." The Court finds these allegations to be vague and conclusory, and as to the disclosures, counter to documentation integral to the Amended Complaint. *See* Dkt. No. 35-3 at 1-5. Accordingly, the Court dismisses Plaintiffs' claims as to predatory lending.

### 2. Common Law Claims

#### a. Fraudulent Misrepresentation

Plaintiffs' first cause of action alleges that Defendants M&T and Zheng, as well as Supreme Associates, "misrepresented the condition of the Property, bedroom count, mortgage eligibility, insurance availability, and TILA disclosures" and further that "Plaintiffs relied on these misrepresentations to their detriment, suffering financial harm, emotional distress, and credit damage." Dkt. No. 23 at 3. The Court construes this cause of action as one for fraudulent misrepresentation under New York state common law.

"Under New York law, to state a cause of action for fraud, a plaintiff must allege a representation of material fact, the falsity of the representation, knowledge by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 291 (2d Cir. 2006) (internal quotations marks and citation omitted).

In federal court, a common law fraud claim is also subject to Rule 9(b) of the Federal Rules of Civil Procedure, which requires that a claim for fraud "state with particularity the circumstances constituting fraud." The Second Circuit has explained that, in order to comply with Rule 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir. 1993)

(citation omitted).  These requirements mirror the level of specificity required to plead fraud under New York law.  *See Eastman Kodak Co. v. Roopak Enters., Ltd.*, 608 N.Y.S.2d 445, 446 (N.Y. App. Div. 1994).  In addition, the Second Circuit requires plaintiffs "'to plead the factual basis which gives rise to a strong inference of fraudulent intent.'"  *United States ex rel. Tessler v. City of New York*, 712 F. App'x 27, 29 (2d Cir. 2017) (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)).

Here, Defendants assert that Plaintiffs fail to plead their misrepresentation claim with the requisite specificity.  The Court agrees.  In conclusory fashion, Plaintiffs allege that "Defendants misrepresented" certain issues but do not identify any specific statements or speakers, where or when any allegedly fraudulent statements were made, or why any such statements were false.  In their response, Plaintiffs argue that Defendant Zheng "unilaterally reclassified [the Property] as a one-unit home" despite Plaintiffs being approved for a loan on a two-unit property.  Dkt. No. 36 at 2.  Plaintiffs fail, however, to explain how this act constitutes fraud or why it would be relevant to their decision to purchase the Property.  Plaintiffs also allege that certain defective conditions on the Property "were concealed or misrepresented" but do not specify who made such representations, what specifically was said, or why Plaintiffs were justified in relying on such representations.  *See id.*

As such, the Court finds that Plaintiffs fail to state a claim for fraudulent misrepresentation and dismisses their first cause of action as to Defendants.

#### b.  Misrepresentation of Property Value

In their ninth cause of action, Plaintiffs allege that the "appraisals (Exhibits K-M) and property advertising (Exhibit R) were false and misleading, causing Plaintiffs to overpay."  Dkt. No. 23 at 4.  As before, Plaintiffs fail to plead this allegation with the requisite specificity.

14

Moreover, as Defendants assert, the exhibits to which Plaintiffs cite do not implicate any of the defendants named in this action. Instead, Exhibits K-M to the Amended Complaint are appraisals conducted by third parties, Dkt. No. 23-1 at 55-82, and Exhibit R is a listing from Zillow.com, *id.* at 95-96. For these reasons, the Court dismisses Plaintiffs' ninth cause of action as to Defendants.

### c.  Unjust Enrichment

Plaintiffs allege that Defendant M&T and Supreme Associates "were unjustly enriched by collecting payments and profiting from a defective mortgage transaction." Dkt. No. 23 at 3. "While an unjust enrichment claim may be premised on deceptive conduct, 'unjust enrichment is not a catchall cause of action to be used when others fail [and an] unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.'" *Mancuso v. RFA Brands, LLC*, 454 F. Supp. 3d 197, 208 (W.D.N.Y. 2020) (citation omitted). Here, the Court incorporates its dismissal of Plaintiffs' claims alleging a defective mortgage transaction. Because unjust enrichment cannot be used as a catchall where other claims predicated on the same alleged conduct fail, the Court dismisses Plaintiffs' claim for unjust enrichment as to Defendant M&T. *See, e.g.*, *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (N.Y. 2012) (dismissing unjust enrichment claim in part because it could not remedy otherwise defective claims).

### 3.  Lack of Standing, Injunctive Relief, and "NYSERDA Program Closure"

Stylized as a claim for "Lack of Standing/Defective Mortgage," Plaintiffs' fourth cause of action alleges that Defendant M&T lacked "lawful standing to enforce the mortgage due to origination defects, false pretenses, fraud, and failure to properly execute and sign the loan." Dkt. No. 23 at 3. However, lack of standing is an affirmative defense that a defendant raises against a plaintiff.

Plaintiffs' sixth cause of action brings a claim against all defendants for "Injunctive Relief" seeking "temporary and permanent injunctions restraining [d]efendants from foreclosure, lis pendens filings, or enforcing the mortgage during this action." *Id.* But injunctive relief is a remedy, not its own cause of action. *Reuben H. Donnelley Corp. v. Mark I Mktg. Corp.*, 893 F. Supp. 285, 294 (S.D.N.Y. 1995) ("There is no 'injunctive' cause of action under New York or federal law.").

And Plaintiff's eleventh cause of action, "NYSERDA Program Closure/Regulatory Harm," alleges that unsafe conditions on the Property led the New York State Energy Research and Development Authority to close out Plaintiff's insulation and energy upgrade application, leading to "financial and opportunity loss." Dkt. No. 23 at 4; *see id.* at ¶ 22. Here, however, Plaintiffs allege no wrongful actions that led to the closeout and thus fail to state a claim.

Because none of these allegations constitute a legally cognizable cause of action, the Court dismisses Plaintiffs' fourth, sixth, and eleventh causes of action against Defendants.

### D. Supreme Associates

Finally, the Court acknowledges that Supreme Associates, against whom Plaintiffs still wish to proceed, *see* Dkt. No. 50, has yet to be served in this matter, *see* Dkt. Nos. 52, 53, 57 (returning unexecuted reissued summons as to Supreme Associates because Plaintiffs failed to provide complete mailing address). Pursuant to Rule 4(m), that fact alone would be a sufficient basis on which to dismiss the claims against Supreme Associates. *See* Fed. R. Civ. P. 4(m) (providing that a court must dismiss an action against defendants if they have not been served within 90 days, except for good cause shown); *see also Dimperio v. Onondaga Cty.*, No. 9:13-CV-1202, 2015 WL 5603507, at *12 (N.D.N.Y. Sept. 23, 2015) (stating that a *pro se* plaintiff who

fails to act after notification that the U.S. Marshals Service could not serve a particular defendant risks dismissal).

But even if Plaintiffs had effected timely service on Supreme Associates, the Court incorporates its previous determinations and finds that Plaintiffs have failed to state a claim against Supreme Associates. *See supra* Sections IV.C.1.d-e; IV.C.2.a-c; IV.C.3. Therefore, the Court also dismisses Plaintiff's first, fifth, sixth, seventh, ninth, eleventh, and twelfth causes of action against Supreme Associates for failure to state a claim. *Cf. Cioce v. Cnty. of Westchester*, No. 02 CIV. 3604, 2003 WL 21750052, at \*4-5 (S.D.N.Y. July 28, 2003), *aff'd,* 128 F. App'x 181 (2d Cir. 2005) (dismissing plaintiff's claims on the merits after concluding dismissal under Rule 4(m) was also appropriate).

### E.  Leave to Amend

In their response to the Motion, Plaintiffs request leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2). Dkt. No. 36 at 5. Defendants, citing Plaintiffs' multiple previous complaints in both *Chavous I* and *Chavous II*, assert that the Court should not grant Plaintiffs another opportunity to replead. Dkt. No. 35-1 at 19; Dkt. No. 39 at 13-14.

"While, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, 'leave to amend shall be freely given when justice so requires, it is within the sound discretion of the district court to grant or deny leave to amend . . . for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (alteration in original) (quoting *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018)). "Moreover, a district court is under 'no obligation' to grant leave to amend when the plaintiff offers merely 'conclusory assertion[s]' that amendment would cure a complaint's deficiencies and 'fail[s] to disclose what additional allegations [he] would make which might lead to a different

17

result.'" *Abe v. New York Univ.*, No. 14-cv-9323, 2016 WL 1275661, at *11 (S.D.N.Y. Mar. 30, 2016) (Sullivan, J.) (alterations in original) (first quoting *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249 (2d Cir. 2004); and then citing *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53-54 (2d Cir. 1999)). "Repeated failure to cure deficiencies by amendments previously allowed" warrants denial of leave to amend. *Dluhos v. Floating and Abandoned Vessel, Known as New York*, 162 F.3d 63, 69 (2d Cir. 1998).

Here, Plaintiffs' opposition to the Motion fails address how leave to amend would cure the Amended Complaint's deficiencies. Furthermore, over the course of this action, Plaintiffs have submitted or attempted to submit five complaints, all of which are substantively similar and fail to address persistent deficiencies. *See* Dkt. Nos. 2, 11-3, 23, 28-1, 54. And Plaintiffs' most recent submission, styled as a "Second Amended Complaint" and submitted without the Court's leave, Dkt. No. 54, is an exact copy of the Amended Complaint, despite the Motion including integral documents explicitly disproving factual allegations central to many of Plaintiffs' claims. *See* Dkt. Nos. 35-3, 35-5 (Closing Disclosures and notarized Mortgage signed by Plaintiffs). The Court therefore finds that granting leave to amend is inappropriate and denies Plaintiffs' Rule 15(a)(2) request.

V.    **CONCLUSION**

Accordingly, the Court hereby

**ORDERS** that pursuant to Plaintiffs' voluntary dismissal, Dkt. No. 50, the claim against White Harbor Group be **DISMISSED**; and the Court further

**ORDERS** that Defendants' Motion, Dkt. No. 35, be **GRANTED** in its entirety; and the Court further

**ORDERS** that Plaintiffs' Amended Complaint, Dkt. No. 23, be **DISMISSED without leave to amend**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules and close the case.

**IT IS SO ORDERED**

Dated: May 18, 2026
      Albany, New York

Anne M. Nardacci
U.S. District Judge